IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAGEO NORTH AMERICA INC., *et al.* | No. C 09-01697 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGEMENT** |
| v. | |
| CON-WAY TRUCKLOAD, INC. | |
| Defendant. | |

On October 23, 2009, the Court heard oral argument on the parties' cross-motions for partial summary judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court DENIES defendant's motion and GRANTS plaintiffs' motion.

**BACKGROUND**

This dispute arises out of the non-delivery of cargo worth $98,571.00. The cargo at issue, which initially consisted of 22 pallets containing 1,983 cartons of tequila, departed Jalisco, Mexico in a sealed trailer on or about November 28, 2007. A Mexican motor carrier, Transportes Rodella, carried the trailer to the Mexico-U.S. border. Defendant Con-Way Truckload, Inc., formerly known as Contract Freighters, Inc. ("CFI"), and currently doing business as Con-Way Trucking ("Con-Way"), received the trailer containing the cargo on or about December 1, 2007 in Laredo, Texas, and eventually delivered the cargo to Southern Wine & Spirits in Union City, California on or about December 7, 2007, at which point the trailer only contained 6 pallets with 527 cartons of tequila. In other words, the cargo was short

16 pallets or 1,456 cartons of tequila, causing a loss of $98,571.00.[1] Plaintiff Diageo North America, Inc. ("Diageo") was the owner of the shipment of cargo and plaintiff Zurich American Insurance Company ("Zurich") was the insurer of the shipment (collectively referred to as "plaintiffs").[2] Plaintiffs allege that defendant received the 22 pallets of tequila for delivery in Laredo, Texas, but failed to properly deliver 16 of the 22 pallets of tequila to Southern Wine & Spirits in Union City, California. Accordingly, plaintiffs seek to recover the value of the undelivered cargo from defendant.

On March 18, 2009, plaintiffs filed a complaint against defendant in Alameda County Superior Court seeking damages in the amount of $98,571.00 for the undelivered cargo. On April 17, 2009, defendant invoked federal question jurisdiction and removed the case to this Court. On April 22, 2009, defendant filed an answer to the complaint in which it asserted affirmative defenses based on (1) plaintiff's failure to state a claim for which relief can be granted, (2) limitation of plaintiffs' recovery to cost of manufacture and transportation of replacement merchandise, (3) applicability of Mexican law to plaintiffs' claim, (4) applicability of defendant's privately negotiated tariff, and (5) lack of causation. Ans. of Def. (Docket No. 4).

Now before the Court are parties' motion for partial summary judgment on defendant's third and fourth affirmative defenses. Defendant seeks a holding that the parties expressly waived the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. §14706, which governs motor carrier liability in interstate transportation, and instead contractually agreed to be bound by defendant's tariff, which includes a liability limitation provision imposed by Mexican law. Plaintiffs seek a ruling that Mexican law is inapplicable and that defendant's liability is not limited to an amount less than plaintiffs' claimed damages of $98,571.00.

Several documents are relevant. First, a document entitled "Rate/Liability Schedule" was issued by CFI, Con-Way's predecessor, on October 11, 2007. The document lists the mileage rates for four shipments, including the shipment at issue, that were tendered by Don Julio, Diageo's Mexican affiliate.

---

[1] The parties do not dispute the fact that "only 6 pallets were delivered and that the value of the undelivered cargo is $98,571." Joint Status Rep. ¶ 15 (Docket No. 6).

[2] In the shipping documents submitted by the parties, Tequila Don Julio SA de CV (Don Julio), the Mexican affiliate of plaintiff Diageo, is indicated as the shipper. Plaintiffs named Don Julio as a non-party interested entity in their Notice of Interested Parties (Docket No. 7).

2

At the top portion of the document is the following language:

> By tendering shipment hereunder, Customer acknowledges that CFI offers differing levels of cargo liability at differing rates; agrees under 49 USC 14706 that CFI's cargo liability at these rates will not exceed $100,000 per truckload ($.05/lb. for used cargo), with no liability for Mexican losses, and agrees to strictly comply with Item 180-20 of CFI's Memorandum Tariff series and General Carriage Rules (see below) if it desires higher liability.

Rate/Liability Schedule, Cholic Decl. Ex. C.  The Rate/Liability Schedule also includes the following language at the bottom:

> Shipments hereunder also are governed by and subject to CFI's Memorandum Tariff Series and General Carriage Rules, available on request, including cargo liability limitations and exclusions therein.  Contrary Title 49 provisions are waived to the fullest extent legally permitted.

*Id*.

Second, CFI's Memorandum Tariff Series and General Carriage Rules ("CFI's Tariff"), which is referred to in the Rate/Liability Schedule, includes the following provision governing shipments to and from Mexico:

Cargo Liability – No Liability for Mexican Losses

> A. Carrier's liability is limited to loss or damage occurring within the USA and/or Canada.  Carrier shall not be liable for any cargo damage, loss, injury, or delay occurring in Mexico or otherwise outside of the USA and/or Canada, under a through and/or international bill of lading or otherwise.  If this geographical liability limitation is judicially or otherwise determined to be ineffective for any reason whatsoever, then Carrier's liability for loss or damage in Mexico shall be limited to the lesser of (1) five U.S. cents per pound ($0.05/lb.) or (2) the current standard liability limitation under Mexican law for uninsured goods for which no higher valuation has been declared (approximately $0.03/lb. in 2001), with claims for such Mexican losses to be asserted within the time limits provided under Mexican law.  In any event, any damage, loss, theft or injury to cargo being shipped to or from Mexico shall be presumed to have occurred in Mexico, and therefore will be subject to this items of limitations, absent clear and convincing proof to the contrary.
>
> B. Any transportation or billing arrangements made by Carrier regarding freight transportation within, into or out of Mexico (including but [not] limited to arranging for Mexican motor carriers, quoting through rates, billing for and/or remitting payment to Mexican carriers, and/or issuing though bills of lading for transportation into or out of Mexico) are done by Carrier solely as an accommodation and convenience to the shipper or customer, but shall not create or impose upon Carrier any liability or responsibility for any Mexican claim or loss under any agency, subcontractor, joint venture or similar theory, or otherwise.
>
> C. Title 49 cargo liability rights and remedies which are contrary to this Item or to this Rules Tariff's other cargo liability provisions are hereby waived to the fullest extent legally permitted.

CFI's Tariff, Fowler Decl., Ex. F.

Third, a bill of lading ("BOL") was issued at Laredo, Texas, on November 30, 2007, indicating that CFI received the cargo destined for Union City, California. The BOL includes the following language: "RECEIVED, subject to the classifications and tariffs in effect on the date of this Bill of Lading." BOL, Attridge Decl., Ex. E.

Defendant contends that the BOL clearly incorporates CFI's Tariff, which specifically provides in Paragraph A that CFI is not liable for Mexican losses and that any loss or damage to cargo shipped to or from Mexico is presumed to have occurred in Mexico "absent clear and convincing proof to the contrary." Defendant also relies on language in the Rate/Liability Schedule and Paragraph C of CFI's Tariff expressly waiving provisions of Title 49 that are contrary to its private tariff.

Plaintiffs contend that the Rate/Liability Schedule and CFI's Tariff do not form a part of the parties' contract, and that even if they did, the language cited by defendant is inapplicable because plaintiffs claim their cargo loss occurred within the United States under a domestic bill of lading. Plaintiffs argue that the language in the Rate/Liability Schedule, providing that Customer (Diageo) "agrees under 49 USC 14706 that CFI's cargo liability at these rates will not exceed $100,000 per truckload," is the only limitation that could potentially apply to claims for U.S. losses. Plaintiffs further argue that defendant's reliance on the Carmack Amendment, 49 U.S.C. §14706, to limit its liability to $100,000 confirms the applicability of the Carmack Amendment rather than Mexican law to this case.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Serv., Inc. v.*

*Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(e)).

At the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

The parties dispute whether defendant can limit its liability, and this in turn depends on whether U.S. law or Mexican law applies to this case. In the United States, claims against rail and motor carriers engaged in interstate transportation are governed by the Carmack Amendment. Specifically, 49 U.S.C. §14706(a)(1) provides that a motor carrier is liable for the "actual loss or injury to the property" it received for transportation.[3] The Carmack Amendment allows a motor carrier to limit its liability to a value that would be "reasonable under the circumstances surrounding the transportation." 49 U.S.C. §14706(c)(1)(A). Further, 49 U.S.C. §14101(b)(1) allows a shipper and a carrier to expressly waive, in writing, provisions of the Carmack Amendment. In Mexico, motor carriers' liability for cargo loss or damage is regulated by the Mexican Commercial Code and the Motor Transportation of Cargo and Model Bill of Lading Regulations. The regulations provide that Mexican truckers are liable for "approximately 3¢ a pound on shipments weighing 200 kilograms or more (4400 lbs.) based on 15 times the minimum daily wage for the Federal District (Mexico City)." *See* William J. Augello & George Carl Pezold, Freight Claims in Plain English, 20.1 (3d ed. 1995). The regulations also allow a carrier and a shipper to "agree to a higher limit of liability (actual value) and charge the shipper the cost of insuring

---

[3] Claims against rail carriers are governed by 49 U.S.C. §11706.

5

that amount." *Id.*

Defendant argues that Mexican law applies to this case either because (1) the shipment at issue was a "through movement" from Jalisco, Mexico to Union City, California so that the terms of shipment under Mexican law contained in the Mexican bill of lading (Carte de Porte) issued at Jalisco continued to apply the entire length of the shipment including the U.S. domestic transport, or (2) the parties contractually agreed to the application of Mexican law because the BOL issued at the Mexico-U.S. border incorporated CFI's Tariff including the limitation of liability and waiver provisions. Plaintiffs argue that Mexican law is inapplicable because (1) defendant adopted a separate domestic bill of lading as a contract of interstate carriage from Laredo, Texas to Union City, California, which triggered the application of the Carmack Amendment as a matter of law; (2) defendant cannot prove that the parties contractually agreed to be bound by defendant's tariff containing the limitation of liability and waiver provisions; (3) in any event, the provisions relied upon by defendant are inapplicable to plaintiffs' claim since plaintiffs assert losses in the United States; and (4) defendant's removal of this action to federal court constitutes a judicial admission that the Carmack Amendment applies to this case.

**1.    Whether the parties contracted for a "through movement" covering the entire length of the shipment cannot be determined as a matter of law**

Defendant asserts that the Rate/Liability Schedule indisputably demonstrates that the parties contracted for a "through movement" from Jalisco, Mexico to Union City, California. Defendant relies on *State of Texas v. Anderson, Clayton & Co.*, 92 F.2d 104, 107 (5th Cir. 1937), which held that whether a particular movement of freight is an interstate or foreign shipment is determined based on the intention of the parties at the time the shipment starts. Defendant argues that since both parties intended the shipment to be an international through movement and the shipment originated in Mexico, the terms of the Mexican bill of lading (Carte de Porte), including the statutory limitation of liability, continued to apply throughout the entire shipment. Plaintiffs argue that defendant adopted a "separate, domestic (not through) bill of lading" as a separate contract of carriage for the American leg, and another unaffiliated trucking company was hired to carry the cargo within Mexico. Plaintiffs rely on *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir. 1986), which held that the domestic leg of a

6

journey will be subject to the Carmack Amendment as long as the domestic leg is covered by a separate bill of lading, and argues that since the BOL issued at the Mexico-U.S. border was a separate domestic bill of lading, the Carmack Amendment applies to this case as a matter of law.

A bill of lading is a contract that "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry Co. v. Kirby*, 543 U.S. 14, 18-19 (2004). A "through" bill of lading specifically covers both the foreign leg and the U.S. domestic leg of an international shipment in one single document. *Id*. at 25-26. There is a Circuit-split on the issue of whether the Carmack Amendment can apply to a shipment from a foreign country into the United States under a through bill of lading. The Fourth, Sixth, Seventh, and Eleventh Circuits have held that the Carmack Amendment does not apply to the inland leg of a multimodal shipment under a through a bill of lading, whereas the Second and Ninth Circuits have held that the Carmack Amendment can apply to the inland portion of a multimodal shipment, even where there is a through bill of lading. *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd.*, 557 F.3d 985, 994-995 (9th Cir. 2009), *cert. granted*, Nos. 08-1553, 08-1554, 2009 WL 1725959 (U.S. Oct. 20, 2009). The Ninth Circuit held that even with a through bill of lading, parties can waive provisions of the Carmack Amendment for the domestic leg of an international shipment only if they satisfy the specific statutory requirements for opting out of the provisions of the Carmack Amendment. *Id*. at 990. In view of these circuit conflicts, the Supreme Court on October 20, 2009 granted certiorari in *Regal-Beloit Corp.*[4]

However, this Court need not await the Supreme Court's resolution of this question because defendant has not submitted any document evidencing the existence of a "through" bill of lading that specifically mentions the Mexican limitation of liability provision and describes the entire route of the shipment from Jalisco to Union City in one single document. Defendant merely relies on the Rate/Liability Schedule issued before the shipment, which is clearly different from a bill of lading that

---

[4] Defendant also relies on *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd.* to respond to plaintiffs' contention that defendant's removal of this action by invoking federal question jurisdiction constitutes defendant's judicial admission that the Carmack Amendment, not Mexican law, applies to the contract. In light of the disposition of the other issues raised by the parties, the removal question is moot.

7

indicates that a carrier has received goods from the party that wishes to ship them. In other words, this Court cannot determine as a matter of law that the cargo at issue was carried under a through bill of lading, nor can it determine that the parties intended the shipment to be a "through movement," which is a factual dispute that is not appropriate for adjudication at this stage.

**2.  Whether the parties effectively waived the Carmack Amendment and contractually agreed to be bound by the Mexican limitation of liability cannot be determined as a matter of law**

Defendant alternatively argues that 49 U.S.C. §14101(c)(1)(A) specifically permits a shipper and a carrier to voluntarily opt out of the Carmack Amendment and set their own terms and conditions of carriage, and that the parties did so here. Defendants point to the Rate/Liability Schedule and CFI's Tariff as evidence that the parties effectively agreed to be bound by the Mexican limitation of liability in their contract.

Defendant cites a number of cases in support of its position. First, defendant relies on *Read Rite Corp. v. Burlington Air Express, Ltd.*, 186 F. 3d 1190, 1199 (9th Cir. 1999), to argue that Diageo's purchase of insurance from Zurich for the American leg of the carriage indisputably establishes that plaintiffs contemplated the application of the Mexican limitation of liability for the American leg as well as the Mexican leg. In *Read Rite Corp.*, the Ninth Circuit affirmed summary judgment enforcing a liability limitation provision recited in the parties' air waybill based on the fact that the shipper purchased insurance covering damage to its cargo during shipment. The Ninth Circuit disregarded the shipper's argument that it never actually saw the liability limitation provision before the damage occurred and held that actual possession of the bill of lading with the liability limitation was not necessary because the shipper's purchase of insurance demonstrated its acknowledgment of the liability limitation. *Id.* at 1198.

Second, defendant asserts that the parties are contractually bound by the limitation of liability and waiver provisions in CFI's Tariff based on *Montalvo v. Bekins Moving Solutions, Inc.*, 613 F. Supp. 2d 892, 897 (S.D. Tex. 2009) (holding that generally, a shipper is conclusively bound by tariff rules of a carrier and parol evidence cannot be received to vary the terms of the tariff rules), and *CSX Transportation, Inc. v. Meserole Street Recycling*, 618 F. Supp. 2d 753, 765 (W.D. Mich. 2009) (holding that the bill of lading and all accompanying tariffs contractually bind the original shipper and all

connecting carriers).

However, in the cases cited by defendant, the actual terms of the contract of carriage were not in dispute. For example, in *Read Rite Corp.*, it was undisputed that the parties' air waybill set forth the terms of the carriage, including the liability limitation, on its reverse side. 186 F.3d at 1193. In *Montalvo*, both parties acknowledged the limitation of carrier liability in their written contract. 613 F. Supp. 2d at 896. In *CSX Transportation, Inc.*, the terms provided in the bill of lading were not at issue. 618 F. Supp. 2d at 767-769. Here, plaintiffs raise a factual dispute over whether defendant's limitation of liability and waiver provisions were set forth in the BOL. Plaintiffs assert that neither the Rate/Liability Schedule nor CFI's Tariff form a part of the parties' contract of carriage because CFI's Tariff did not accompany the BOL, and there is no proof that the Rate/Liability Schedule was provided prior to the loss of cargo. Plaintiffs further argue that the Rate/Liability Schedule is not signed by any party, and neither the BOL nor the Rate/Liability Schedule contains legible language incorporating the CFI's Tariff. Accordingly, plaintiffs contend that the provisions cited by defendant limiting its liability and waiving the Carmack Amendment are irrelevant.[5] In light of these factual disputes, this Court cannot find as a matter of law that the parties contractually agreed to be bound by defendant's tariff containing the limitation of liability and waiver provisions.

**3.    Plaintiffs' claim is for alleged cargo loss within the United States under a domestic bill of lading**

Plaintiffs argue that even if the Rate/Liability Schedule and CFI's Tariff formed a part of the parties' contract, the provisions relied on by defendant are inapplicable to plaintiffs' claim since it alleges loss within the United States under a domestic bill of lading. Specifically, plaintiffs assert that CFI's Tariff only limits liability for Mexican losses. The only potential limitation for domestic losses in the Rate/Liability Schedule ($100,000 pursuant to the Carmack Amendment) is inapplicable here because plaintiffs are seeking less than this amount.

---

[5] Plaintiffs object to the admissibility of CFI's Tariff because the BOL makes no specific reference to this document and the document is incomplete. Based upon the current factual record, the Court cannot determine whether CFI's Tariff constitutes part of the parties' contract. The parties may address this question in a subsequent motion if they wish.

9

Defendant argues that since its tariff provides that any loss or damage to cargo shipped to or from Mexico is presumed to have occurred in Mexico absent "clear and convincing proof to the contrary," and plaintiffs have not shown that they have "clear and convincing proof" that the cargo loss occurred in the United States, it cannot be determined as a matter of law that its liability limitation provision is inapplicable to plaintiffs' claim. However, defendant admits in its reply brief that $100,000 "is what the limit would be if the loss indisputably happened in America." Defs. Reply 3:7-8 (Doc. No. 30).

Thus both parties agree – as indeed it would be struthious to deny – that if plaintiffs can prove that the cargo loss occurred in the United States, defendant's limitation of liability will be $100,000 pursuant to 42 U.S.C. §14706 and the Mexican limitation of liability will be inapplicable. Plaintiffs evidently seek summary judgment on this narrow issue, and it will be granted on this narrow issue.[6]

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for partial summary judgment, and GRANTS plaintiffs' cross-motion for partial summary judgment on the issue outlined immediately above. (Docket Nos. 17, 24)

**IT IS SO ORDERED.**

Dated: November 2, 2009

SUSAN ILLSTON
United States District Judge

---

[6] Defendant relies on *Ed Miniat, Inc. v. Baltimore & Ohio Ry. Co.*, 587 F.2d 1277, 1283 (D.C. Cir. 1978), to argue that plaintiffs cannot even establish a prima facie case for cargo loss within the United States because the trailer containing their cargo was tendered under seal and plaintiffs have no direct proof that defendant received the entire 22 pallets of tequila at the Mexico-U.S. border. However, neither party moved for summary judgment on the question of where the loss occurred, or on what burden of proof will apply to that issue. The factual disputes concerning the status of the parties' underlying contract documents would likely prevent such a determination as a matter of law at this time.

10